# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
    :
PAUL C. KRAFT AND LINDA E. KRAFT   :   Case No.
JTWROS, Individually and on Behalf of All  :
Others Similarly Situated,             :   <u>CLASS ACTION</u>
    :
            Plaintiff,     :
    :   COMPLAINT FOR VIOLATIONS OF
    :   THE FEDERAL SECURITIES LAWS
     vs.           :
    :
THIRD COAST MIDSTREAM, LLC f/k/a/  :   <u>DEMAND FOR JURY TRIAL</u>
AMERICAN MIDSTREAM PARTNERS, LP, :
ARCLIGHT CAPITAL PARTNERS, LLC   :
STEPHEN W. BERGSTROM, JOHN F.    :
ERHARD, DANIEL R. REVERS, JOSEPH W.:
SUTTON, and LUCIUS H. TAYLOR     :
    :
          Defendants.    :
    :
    :
———————————————————— x

**INTRODUCTION**

Plaintiff Paul C. Kraft and Linda E. Kraft JTWROS ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based on personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based upon the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Third Coast Midstream, LLC f/k/a American Midstream Partners, LP ("American Midstream" or the "Company"), as well as conference call transcripts and media and analyst reports about the Company.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**SUMMARY OF THE ACTION**

1.      This is a securities class action brought on behalf of all former owners of American Midstream common units who sold their units, and were damaged thereby, during the period from July 27, 2018, through July 23, 2019, both dates inclusive (the "Class Period"). Excluded from the Class are: Defendants (as defined herein); the officers and directors of the Company during the Class Period (the "Excluded D&Os"); members of Defendants' and the Excluded D&Os' immediate families; the subsidiaries and affiliates of the Company, including the Company's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); any entity in which Defendants or the Excluded D&Os have or had a controlling interest; and the legal representatives, heirs, successors or assigns of any excluded person or entity.

2.      This case revolves around an undisclosed scheme set in place by Defendants to take American Midstream private for a fraction of its value.  In order to effectuate their plans, Defendants abused their control over the Company by first reducing, and then withholding,

American Midstream's quarterly distribution, which caused its unit price to plummet.  By artificially depressing the Company's unit price, Defendants were able to take American Midstream private at a substantial discount.  Therefore, American Midstream's minority unitholders were harmed as they did not receive fair value for their units.

3.     Formed in 2009, American Midstream is a growth-oriented master limited partnership formed to own, operate, develop, and acquire a diversified portfolio of midstream energy assets.  At all relevant times, American Midstream's general partner was American Midstream GP, LLC (the "General Partner").  The General Partner was solely responsible for supporting and conducting the business operations of American Midstream, which partnership lacked any employees of its own.

4.     In 2011, American Midstream conducted an initial public offering of its common units, which offering closed on August 1, 2011 (the "IPO").  Following the IPO, American Midstream consecutively issued a quarterly distribution of $0.4125 per common unit, or $1.65 per unit annually.  This distribution, therefore, was material to investors seeking a reliable return on their investments.

5.     At all relevant times, ArcLight Capital Partners, LLC ("ArcLight") owned approximately 51 percent of American Midstream's voting power, and therefore was American Midstream's controlling unitholder.  In addition, ArcLight was affiliated with the General Partner's owners.  High Point Infrastructure Partners, LLC ("HPIP"), which owned 86 percent of the General Partner, was a subsidiary of Magnolia Infrastructure Partners, LLC ("MIP"), which was a subsidiary of Magnolia Infrastructure Holdings, LLC ("MIH"), which in turn was a subsidiary of ArcLight.  AMID GP Holdings, LLC, which owned the remaining 14 percent of the General Partner, was also an affiliate of ArcLight.

6.      By virtue of its status as the majority unitholder of the Company and its
interested relationship with the General Partner, ArcLight had complete control over American
Midstream.  During this time, ArcLight ensured that the majority of American Midstream's
Board of Directors were all affiliated with ArcLight.  In addition, ArcLight, through its power
over the General Partner, had the ability to control the day-to-day operations of American
Midstream, including whether to cut or suspend cash distributions to American Midstream
unitholders.

7.      On July 27, 2018, Defendants initiated the first step of their scheme to take
American Midstream private for a fraction of its value.  On this date, American Midstream—at
the behest of ArcLight—declared a *75 percent* reduction in the Company's quarterly common
unit distribution to $0.1031, or $0.4125 annually.  As a result of this massive reduction,
American Midstream's unit price declined over *42 percent*, falling precipitously from $11.55 to
$6.60 on July 27, 2018.  This distribution cut was part of a scheme by ArcLight to artificially
depress the trading price of American Midstream's common units in order to take American
Midstream private for nearly half of the pre-cut trading price.

8.      To that end, on September 14, 2018, less than two months after the distribution
cut was announced, Arclight informed American Midstream that it was evaluating a potential
strategic transaction involving American Midstream, including a potential take private
transaction.

9.      Then, on September 27, 2018, MIH, which again, was a subsidiary of ArcLight,
and indirectly the 86 percent owner of the General Partner, delivered a non-binding offer to the
General Partner's Board to acquire all of the issued and outstanding publicly held common units
of American Midstream that were not directly owned by MIH or its affiliates in exchange for

$6.10 in cash for each such common unit.  MIH's offering price was a ***47 percent*** discount to American Midstream's unit price of $11.55 immediately prior to the reduction of the Company's quarterly distribution.

10.     Then, on December 31, 2018, American Midstream reported that because of an amendment to its credit facility agreement, it did not expect to make *any* distributions to its unit holders in the upcoming fourth quarter of 2018, and would continue to *withhold* said distributions until its consolidated total leverage ratio was reduced.  On this news, American Midstream's common units declined $1.30, or 30 percent, closing at a price of $3.03 per unit on December 31, 2018.

11.     While the distribution remained in limbo, on January 2, 2019, MIH submitted a revised non-binding offer to acquire all the issued and outstanding publicly held common units of American Midstream not directly owned by MIH and its affiliates in exchange for $4.50 in cash for each such common unit.  MIH's revised offer now represented a ***61 percent*** discount to the Company's unit price immediately prior to the quarterly distribution reduction.

12.     On March 18, 2019, American Midstream publicly disclosed it had entered into a merger agreement with MIH pursuant to which American Midstream unitholders would receive $4.50 per unit for MIH to acquire the remaining publicly-traded American Midstream common units (the "Merger").

13.     On July 23, 2019, American Midstream announced the closing of the Merger, and the Company's unitholders received $4.50 in cash in exchange for each of their units.  On August 2, 2019, American Midstream announced that its units had been delisted.

14.     Therefore, as a result of the distribution cut put in place by virtue of ArcLight's *de facto* status as the true controlling force behind the Company, American Midstream minority

unitholders received approximately *60 percent less* consideration for their units than the common unit price immediately prior to the distribution cut on July 27, 2018.

## JURISDICTION AND VENUE

15.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

16.    Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b).  Defendant ArcLight has its principle place of business and operates its business in New York.  Further, a significant portion of Defendants' actions, and the subsequent damages, took place within this District.  Finally, at all relevant times American Midstream's common units traded on the New York Stock Exchange ("NYSE").  In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

17.    Plaintiff, as set forth in the accompanying Certification, which is incorporated by reference herein, sold American Midstream common units during the Class Period and was damaged as the result of Defendants' wrongdoing as alleged in this complaint.

18.    Defendant American Midstream was at all relevant times a publicly-traded master limited partnership formed to own, operate, develop, and acquire a diversified portfolio of midstream energy assets.  Until July 23, 2019, American Midstream traded on the New York Stock Exchange under the ticker AMID.  On July 23, 2019, American Midstream publicly

announced the completion of the Merger.  Following the take-private transaction, American

Midstream changed its name to Third Coast Midstream, LLC.

19.     Defendant ArcLight is a leading infrastructure investment private equity firm

focused on investing in North American energy assets.  ArcLight was the controlling unitholder

of American Midstream prior to the Merger, holding, with its affiliates, 51 percent of the

Company's outstanding voting power.  Through Arclight's indirect majority ownership of the

General Partner, ArcLight controlled the General Partner, thus providing ArcLight the power

and authority to direct American Midstream's day-to-day operations.

20.     Defendant Stephen W. Bergstrom ("Bergstrom") has served as a Director on the

Company's Board since April 2013.  Bergstrom also formerly served as American Midstream's

President and Chief Executive Officer from May 2013 until retiring from those positions in

December 2015.  In June 2017, Bergstrom took on the additional role as American Midstream's

Executive Strategy Advisor.  Bergstrom was appointed to the Board in connection with his

affiliation with ArcLight, which controls the General Partner.  Bergstrom acted as an exclusive

consultant to ArcLight from 2002 to 2015, assisting ArcLight in connection with its energy

investments.

21.     Defendant John F. Erhard ("Erhard") has served as a Director on the Company's

Board since April 2013.  Erhard was appointed to the Board in connection with his affiliation

with ArcLight, which controls the General Partner.  Erhard has been employed by ArcLight

since 2001 and currently serves as a Partner at ArcLight.

22.     Defendant Daniel R. Revers ("Revers") has served as a Director on the

Company's Board since April 2013.  Revers was appointed to the Board in connection with his

affiliation with ArcLight, which controls the General Partner.  Revers is the Managing Partner

and Co-Founder of ArcLight.  Revers manages ArcLight's office and is responsible for overall investment, asset management, strategic planning, and operations of ArcLight and its funds.

23.     Defendant Joseph W. Sutton ("Sutton") has served as a Director on the Company's Board since May 2013.  Sutton was appointed to the Board in connection with his affiliation with ArcLight, which controls the General Partner.  Sutton is a founder of High Point Energy, a precursor company to American Midstream.

24.     Defendant Lucius H. Taylor ("Taylor") has served as a Director on the Company's Board since April 2013.  Taylor was appointed to the Board in connection with his affiliation with ArcLight, which controls the General Partner.  Since 2007, Taylor has been employed by ArcLight and currently serves as a Principal at ArcLight.

25.     American Midstream and the aforementioned defendants are referred to herein, collectively, as "Defendants."

26.     Defendants Bergstrom, Erhard, Revers, Sutton, and Taylor are collectively referred to hereinafter as the "Director Defendants."

27.     Defendants Arclight and the Director Defendants are hereinafter referred to as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of American Midstream's reports to the SEC, press releases, and presentations to securities analysts, money portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified

herein had not been disclosed to, and were being concealed from, the public, and that the

positive representations that were being made were then materially false and/or misleading.

The Individual Defendants are liable for the false statements pleaded herein, as those statements

were each "group-published" information, the result of the collective actions of the Individual

Defendants.

## SUBSTANTIVE ALLEGATIONS

28.     Formed in 2009, American Midstream is a growth-oriented master limited

partnership formed to own, operate, develop, and acquire a diversified portfolio of midstream

energy assets.  The Company's General Partner was solely responsible for supporting and

conducting the business operations of American Midstream, which partnership lacked any

employees of its own.

29.     On August 1, 2011, American Midstream closed its IPO of 3,750,000 common

units at an offering price of $21 per unit.  After going public, American Midstream without fail

declared a quarterly distribution of $0.4125 per common unit, or $1.65 per unit annually, which

dividend was material to investors seeking a reliable return on their investments.[1]

30.     At all relevant times, ArcLight owned approximately 51 percent of American

Midstream's voting power, and therefore was American Midstream's controlling unitholder.

In addition, ArcLight was affiliated with the General Partner's owners.  HPIP, which owned 86

percent of the General Partner, was a subsidiary of MIP, which was a subsidiary of MIH, which

in turn was a subsidiary of ArcLight.  AMID GP Holdings, LLC, which owned the remaining 14

percent of the General Partner, was also an affiliate of ArcLight.

---

[1]     The Company's first quarterly distribution of $0.2690, which corresponded to the distribution
price of $0.4125 per unit, was prorated to reflect the 60-day period from the date of the closing of
American Midstream's IPO through the end of the Company's third quarter 2011, ended September 30,
2011.

31.     By virtue of its status as the majority unitholder of the Company and its interested relationship with the General Partner, ArcLight had complete control over American Midstream.  During this time, ArcLight ensured that the majority of American Midstream's Board of Directors were all affiliated with ArcLight, *i.e.*, the Director Defendants.  In addition, ArcLight, through its power over the General Partner, had the ability to control the day-to-day operations of American Midstream, including whether to cut or suspend cash distributions to American Midstream unitholders.

32.     Prior to the start of the Class Period, Defendants touted American Midstream's strong results.  For example, on April 26, 2018, the Company issued a press release announcing its quarterly distribution for its first quarter 2018, lauding it as the "twenty-seventh consecutive quarterly distribution since the Partnership's initial public offering in 2011."  Furthermore, on May 15, 2018, American Midstream held a conference call with analysts and investors to discuss the Company's first quarter 2018 results.  On the call, Lynn L. Bourdon III ("Bourdon"), the then-current Chief Executive Officer of the General Partner, described the quarter as "record setting," "driven by a combination of continued solid performance," which the Company and General Partner "expect[ed] to carry forward."

## FALSE AND MISLEADING STATEMENTS AND OMISSIONS

33.     The Class Period begins on July 27, 2018, when American Midstream announced a revised capital allocation strategy.  As part of this strategy, American Midstream for the first time since it became publicly traded, announced that it was drastically slashing its quarterly distribution by ***75 percent***, to $0.1031, or $0.4125 annually.  This news was material to investors, as American Midstream's often-touted consecutive quarterly distribution had represented a reliable return on investment for the previous twenty-seven quarters.

34.     On this news, American Midstream's unit price declined over *42 percent*, from

$11.55 to $6.60, on July 27, 2018.  The Company's unit price continued to decline over the next

several trading days, closing at $5.30 on July 31, 2019.  As revealed *infra*, American

Midstream's distribution cut was in fact the first step in a scheme orchestrated by ArcLight to

acquire American Midstream and take the Company private for less than half the trading price.

35.     At the time of the distribution cut, the Company issued a false and misleading

press release stating as follows:

> American Midstream Partners, LP (NYSE: AMID) ("American Midstream" or
> the "Partnership") today announced a revised capital allocation strategy that is
> intended to significantly reduce leverage, provide capital for strategic growth
> opportunities, and create long-term value.
>
> As part of the revised capital allocation strategy the Partnership has determined
> the most prudent sources of accretive growth capital are proceeds from the sale
> of non-core assets and the retention of an increased portion of operating cash
> flow through the reduction of its common unit distribution.
>
> Exclusive of the potential combination with Southcross Energy Partners, L.P.
> and Southcross Holdings LP , the Partnership has identified attractive organic
> growth projects across all core segments. These opportunities will enable the
> Partnership to continue building an integrated midstream company with greater
> scale and density in its core operating areas as well as expanding its reach across
> growing resource developments. The identified projects will focus on the
> continued development of infrastructure along the Gulf Coast , which would
> further the Partnership's ability to participate in the growing export market
> offshore and to Mexico . The aggregate of non-acquisition related growth
> opportunities ranges from $200 to $300 million through 2020 at a blended
> multiple near 5-times expected EBITDA.
>
> The Partnership's management team and Board evaluated and continue to
> evaluate numerous strategies to maximize long-term value. Equity capital market
> constraints for master limited partnerships and the availability of equity capital at
> acceptable costs and in sufficient quantities, warrants retaining an increased
> portion of operating cash flow to support growth of the Partnership. Additionally,
> the Partnership anticipates materially increasing proceeds from non-core asset
> sales, including previously announced terminal divestitures. Together, cash flow
> retention and asset sales will enable the Partnership to reallocate capital to
> meaningful growth opportunities, while promoting balance sheet flexibility,
> substantially reducing indebtedness and minimizing the need to raise external
> equity capital.

Consistent with the revised capital allocation strategy, the Partnership today announced that the Board of Directors of its general partner declared a quarterly cash distribution of $0.1031 per common unit, or $0.4125 per common unit annualized, with respect to the second quarter of 2018. The distribution will be paid on August 14, 2018 to unitholders of record as of the close of business on August 6, 2018 . The Partnership and the Board of Directors of its general partner will continue to evaluate its distribution policy as it executes its plans for growth, deleveraging, and capital access.

Based on the first-half of 2018, the Partnership's assets are expected to generate annualized EBITDA between $190 and $200 million . The Partnership anticipates providing 2019 guidance upon the completion of the customary budget cycle in late 2018.

36.     This press release was false and misleading because it failed to disclose that the Company's Board, the majority of whom were affiliated with ArcLight, actually cut the distribution for the benefit of ArcLight.  At the time of the press release, ArcLight and the Director Defendants had discussed plans to take American Midstream private.  At no time did the Defendants disclose the material fact that ArcLight viewed the distribution cut as a means to take American Midstream private for less consideration per common unit.  Instead, the press release assured investors that American Midstream's capital allocation strategy, which included the 75 percent distribution cut, was merely to "create long-term value."

37.     On September 14, 2018, less than *two months* after the substantial distribution cut was announced, ArcLight contacted Gerald Tywoniuk, a director of American Midstream, to inform him that ArcLight was evaluating a potential strategic transaction involving American Midstream, including a potential take-private transaction.

38.     Then, on September 27, 2018, MIH, a subsidiary of ArcLight, and indirect owner of HPIP, which in turn owned 86 percent of the General Partner, delivered a non-binding offer to the General Partner's Board to acquire all of the issued and outstanding publicly held common units of American Midstream that were not directly owned by MIH or its affiliates in exchange for $6.10 in cash for each such common unit.  The September 27, 2018, offer

11

represented a discount of more than *47 percent* to American Midstream's common unit price prior to the distribution cut on July 27, 2018.

39.     On December 31, 2018, American Midstream reported that it had entered into an amendment to its existing partnership credit facility, and that as a result of such amendment, the Company did not expect to make *any* cash distributions to its unit holders in the upcoming fourth quarter of 2018.  The Company further stated that it would continue to withhold its quarterly distribution until its consolidated total leverage ratio was reduced to less than 5.00:1.00.

40.     On this news, American Midstream's common units declined $1.30, or 30 percent, closing at a price of $3.03 per unit on December 31, 2018

41.     As a result of this further decline in the price of the Company's common units caused by American Midstream's decision to now indefinitely *withhold* its quarterly distribution, on January 2, 2019, MIH submitted a revised non-binding offer to acquire all the issued and outstanding publicly held common units of American Midstream not directly owned by MIH and its affiliates in exchange for $4.50 in cash for each such common unit.  This new price of $4.50 now represented a *60 percent* discount to the Company's unit price prior to the July 27, 2018, quarterly distribution reduction.

42.     On March 18, 2019, American Midstream publicly disclosed it had entered into a merger agreement with MIH pursuant to which American Midstream unitholders would receive a paltry $4.50 per common unit (as previously defined, the "Merger").  Thus, as a result of the distribution cut pushed the Individual Defendants, American Midstream minority unitholders received approximately *60 percent* less consideration for their units than the common unit price prior to the distribution cut on July 27, 2018.  As a result of ArcLight's support of the Merger as

the majority unitholder, American Midstream minority unitholders were unable to vote either for or against the Merger, instead being forced to accept the meager $4.50 per unit.

43.     On April 26, 2019, the Company issued a press release reporting that on April 24, 2019, Bourdon had notified American Midstream of his intent to resign from his role, effective May 3, 2019.  On April 30, 2019, American Midstream filed Form 8-K with the SEC, which disclosed not only Bourdon's multi-million dollar severance package, but that he had entered into a consulting agreement with ArcLight.

44.     On July 23, 2019, American Midstream announced the closing of the Merger, and the Company's unitholders received consideration of $4.50 per unit, which was well below the fair value of said units.  On August 2, 2019, American Midstream announced that its units had been delisted, and thus ceased to be publicly traded.

45.     Therefore, as a result of the distribution cut put in place by virtue of ArcLight's *de facto* status as the sole controlling force behind the Company, American Midstream minority unitholders received approximately 60 percent less consideration for their units than the common unit price immediately prior to the distribution cut on July 27, 2018, and were harmed thereby.

## UNDISCLOSED ADVERSE FACTS

46.     At all relevant times, the market for American Midstream common units was open, well-developed and efficient.  As result of Defendants' false statements and manipulative conduct, American Midstream common units traded at artificially deflated prices during the Class Period.  Plaintiff and other members of the Class sold the Company's common units relying upon the integrity of the market price of the Company's common units and market information relating to American Midstream, and have been damaged thereby.

47.     During the Class Period, Defendants materially misled the investing public, thereby purposely deflating the price of American Midstream's common units, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  These statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about American Midstream's business, operations, and prospects as alleged herein.

48.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause, of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made, or caused to be made, a series of materially false and/or misleading statements about American Midstream's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically negative assessment of the Company and its financial well-being and prospects, thus causing the Company's common units to be undervalued and artificially deflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class selling the Company's common units at artificially deflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

49.     During the Class Period, as alleged herein, the Defendants acted with scienter in that the Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would

be issued or disseminated to the investing public; and knowingly and substantially participated

or acquiesced in the issuance or dissemination of such statements or documents as primary

violations of the federal securities laws.

50.     The Defendants permitted American Midstream to release these false and

misleading statements and failed to file the necessary corrective disclosures, which artificially

deflated the value of the Company's common units.

51.     As set forth herein, the Defendants, by virtue of their receipt of information

reflecting the true facts regarding American Midstream, their control over, receipt, and/or

modification of American Midstream's allegedly materially misleading statements and

omissions, and/or their positions with the Company that made them privy to confidential

information concerning American Midstream, participated in the fraudulent scheme alleged

herein.

52.     The Defendants are liable as participants in a fraudulent scheme and course of

conduct that operated as a fraud or deceit on those who sold American Midstream common

units  by disseminating materially false and misleading statements and/or concealing material

adverse facts.  The scheme deceived the investing public regarding American Midstream's

business, operations, and management and the intrinsic value of American Midstream common

units and caused Plaintiff and members of the Class to sell American Midstream common units

at artificially deflated prices.

### LOSS CAUSATION/ECONOMIC LOSS

53.     During the Class Period, as detailed herein, Defendants engaged in a scheme to

deceive the market and a course of conduct that artificially deflated the price of American

Midstream's common units and operated a fraud or deceit on Class members by failing to

disclose and misrepresenting the facts detailed herein.  This course of conduct misled the Class

members and caused them, in reliance on the misrepresentations and on the market price of

American Midstream's common units during the Class Period, to sell their common units at a

depressed price.  As a result of their sale of American Midstream common units during the

Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages,

under the federal securities laws.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

54.     To the extent that Defendants concealed or improperly failed to disclose material

facts with regard to the Company, Plaintiff is entitled to a presumption of reliance in accordance

with *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972).

55.     Plaintiff is also entitled to rely upon the presumption of reliance established by

the fraud-on-the-market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material

facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     the Company's common units traded in an efficient market;

(d)     the misrepresentations alleged would tend to induce a reasonable investor

to misjudge the value of the Company's common units; and

(e)     Plaintiff and other members of the Class transacted in American

Midstream common units between the time Defendants misrepresented or failed to disclose

material facts and the time the true facts were disclosed, without knowledge of the

misrepresented or omitted facts.

56.     At all relevant times, the markets for American Midstream common units were

efficient for the following reasons, among others:

(a)     as a regulated issuer, American Midstream filed periodic public reports with the SEC;

(b)     American Midstream regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

(c)     American Midstream was followed by several securities analysts employed by major brokerage firm(s) who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s) and that were publicly available and entered the public marketplace; and

(d)     American Midstream common units were actively traded in an efficient market, namely the NYSE, under the ticker symbol "AMID."

57.     As a result of the foregoing, the market for American Midstream common units promptly digested current information regarding American Midstream from all publicly available sources and reflected such information in American Midstream's common unit price. Under these circumstances, all those who purchased or otherwise acquired American Midstream common units during the Class Period suffered similar injury through sales of American Midstream's common units at artificially deflated prices, and the presumption of reliance applies.

## NO SAFE HARBOR

58.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and

conditions.  In addition, to the extent certain of the statements alleged to be false may be

characterized as forward looking, they were not identified as "forward-looking statements"

when made and there were no meaningful cautionary statements identifying important factors

that could cause actual results to differ materially from those in the purportedly forward-looking

statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply

to any forward-looking statements pleaded herein, Defendants are liable for those false forward-

looking statements because at the time each of those forward-looking statements were made, the

speaker had actual knowledge that the forward-looking statement was materially false or

misleading, and/or the forward-looking statement was authorized or approved by an executive

officer of American Midstream who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

59.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of all former owners of American Midstream common units

who sold common units, and were damaged thereby, during the period from July 27, 2018,

through July 23, 2019, both dates inclusive (the "Class").  Excluded from the Class are:

Defendants; the Excluded D&Os; members of Defendants' and the Excluded D&Os' immediate

families; the subsidiaries and affiliates of the Company, including the Company's employee

retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made

purchases through such plan(s); any entity in which Defendants or the Excluded D&Os have or

had a controlling interest; and the legal representatives, heirs, successors or assigns of any

excluded person or entity.

60.     There is a well-defined community of interest in the questions of law and fact

involved in this case.  Questions of law and fact common to the members of the Class which

predominate over questions which may affect individual Class members include:

(a)     Whether the Exchange Act was violated by Defendants;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

(e)     Whether the price of American Midstream common units was artificially deflated; and

(f)     The extent of the damage sustained by Class members and the appropriate measure of damages.

61.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

62.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in securities class action litigation.  Plaintiff has no interests that conflict with those of the Class.

63.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT  I

### For Violation of Section 10(b) of the Exchange Act
### and Rule 10b-5 Against All Defendants

64.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

66.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes, and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their transactions in American Midstream common units during the Class Period.

67.     Plaintiff and the Class have suffered damages in that, as a result of Defendants' wrongful conduct alleged herein, they sold American Midstream common units at artificially deflated prices.  Plaintiff and the Class would not have sold American Midstream common units at the prices they did, if they had been aware that the market prices had been artificially and falsely deflated by Defendants' misleading statements.

68.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their sales of American Midstream common units during the Class Period.

## COUNT II

### For Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

69.     Plaintiff repeats and realleges each and every allegation contained in the

foregoing paragraphs as if fully set forth herein.

70.     The Individual Defendants, as culpability participants, acted as controlling

persons of American Midstream within the meaning of Section 20(a) of the Exchange Act.  By

virtue of their positions and their power to control public statements about American

Midstream, the Individual Defendants had the power and ability to control the actions of

American Midstream and its employees.  By reason of such conduct, Defendants are liable

pursuant to Section 20(a) of the Exchange Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating Plaintiff as Lead

Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of

Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class

members against all Defendants, jointly and severally, for all damages sustained as a result of

Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

this action, including counsel fees and expert fees; and

D.     Awarding such equitable/injunctive or other relief as deemed appropriate by the

Court.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  October 10, 2019                            Respectfully submitted,

                                                   **LABATON SUCHAROW LLP**

                                                   /s/ *Francis P. McConville*
                                                   Christopher J. Keller
                                                   Eric J. Belfi
                                                   David J. Schwartz
                                                   Francis P. McConville
                                                   140 Broadway
                                                   New York, New York 10005
                                                   Telephone: (212) 907-0700
                                                   Facsimile: (212) 818-0477
                                                   ckeller@labaton.com
                                                   ebelfi@labaton.com
                                                   dschwartz@labaton.com
                                                   fmcconville@labaton.com

                                                   *Counsel for Plaintiff*

## CERTIFICATION

I, Paul Kraft, on behalf of the Paul C. Kraft and Linda E. Kraft JTWROS, hereby certify as follows:

1.      In my capacity as co-owner of Paul C. Kraft and Linda E. Kraft JTWROS, I am personally authorized to enter into and execute this certification on behalf of Paul C. Kraft and Linda E. Kraft JTWROS ("Kraft").

2.      I have reviewed a complaint prepared against American Midstream Partners, LP. ("American Midstream") alleging violations of the federal securities laws and authorize its filing;

3.      Kraft did not transact in common units of American Midstream at the direction of counsel or in order to participate in any private action under the federal securities laws;

4.      Kraft is willing to serve as a lead plaintiff and representative party in this matter, including providing testimony at deposition and trial, if necessary;

5.      Kraft's transactions in American Midstream common units during the Class Period are reflected in Exhibit A, attached hereto;

6.      Kraft has not sought to serve as a lead plaintiff in any class action filed under the federal securities laws during the last three years;

7.      Beyond its pro rata share of any recovery, Kraft will not accept payment for serving as a lead plaintiff and representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this            day of September, 2019.

_Paul Kraft_                          9/9/19

Paul Kraft
Authorized Signatory
_Paul C. Kraft and Linda E. Kraft JTWROS_

## EXHIBIT A

## TRANSACTIONS IN AMERICAN MIDSTREAM PARTNERS LP.

| Transaction Type | Trade Date | Shares | Price Per Share | Cost / Proceeds |
|---|---|---|---|---|
| Sale | 07/27/18 | –3,000.00 | $8.70 | $26,100.00 |
| Sale | 12/31/18 | –3,000.00 | $3.81 | $11,418.00 |