**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| PAUL C. KRAFT AND LINDA E. KRAFT JTWROS, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:19-cv-09398-VEC |
| | CLASS ACTION |
| Plaintiff, | ORAL ARGUMENT REQUESTED |
| vs. | |
| THIRD COAST MIDSTREAM, LLC f/k/a/ AMERICAN MIDSTREAM PARTNERS, LP, ARCLIGHT CAPITAL PARTNERS, LLC STEPHEN W. BERGSTROM, JOHN F. ERHARD, DANIEL R. REVERS, JOSEPH W. SUTTON, and LUCIUS H. TAYLOR | |
| Defendants. | |

---

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF PAUL C. KRAFT AND LINDA E. KRAFT JTWROS AND RANDALL DOBLER FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 3

ARGUMENT ...................................................................................................................... 6

I.     THE AMERICAN MIDSTREAM INVESTOR GROUP SHOULD BE
APPOINTED LEAD PLAINTIFF ...................................................................... 6

     A.     The PSLRA Standard For Appointing Lead Plaintiff ........................... 6

     B.     The American Midstream Investor Group Is The "Most Adequate
Plaintiff" ......................................................................................................... 7

           1.     The American Midstream Investor Group's Motion Is Timely ................ 7

           2.     The American Midstream Investor Group Has the Largest
Financial Interest ..................................................................................... 8

           3.     The American Midstream Investor Group Satisfies Rule 23's
Typicality and Adequacy Requirements ................................................... 9

                 (i)     The American Midstream Investor Group's Claims Are
Typical ......................................................................................... 9

                 (ii)     The American Midstream Investor Group Will Fairly and
Adequately Protect the Interests of the Class ............................. 10

           4.     The American Midstream Investor Group Is Precisely the Type of
Small, Cohesive Group Permitted Under the PSLRA ............................. 11

II.     THE AMERICAN MIDSTREAM INVESTOR GROUP'S SELECTION OF
COUNSEL MERITS APPROVAL ...................................................................... 15

CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
    258 F.R.D. 260 (S.D.N.Y. 2009) ...........................................................13

*Basile v. Valeant Pharm. Int'l, Inc.*,
    No. SACV 14-2004 DOC(ANx), 2015 WL 13652714 (C.D. Cal. May 5,
    2015) ..............................................................................................................8

*Bevinal v. Avon Prods., Inc.*,
    No. 19 Civ. 1420 (CM), 2019 WL 2497739 (S.D.N.Y. June 3, 2019) ................8, 9

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .....................................................................15

*Chahal v. Credit Suisse Grp. AG*,
    No. 18-CV-02268 (AT)(SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018) ..................12, 13

*In re Elan Corp. Sec. Litig.*,
    No. 1:08-cv-08761-AKH, 2009 WL 1321167 (S.D.N.Y. May 11, 2009) ..............10

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) ..............................................................7

*Hansen v. Ferrellgas Partners, L.P.*,
    No. 16-cv-7840 (RJS), 2017 WL 281742 (S.D.N.Y. Jan. 19, 2017) ....................11

*Janbay v. Canadian Solar, Inc.*,
    272 F.R.D. 112 (S.D.N.Y. 2010) ............................................................11, 12, 13

*Karp v. Diebold Nixdorf, Inc.*,
    No. 19 Civ. 6180(LAP), 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) ...........13, 14

*Kemp v. Universal Am. Fin. Corp.*,
    No. 05 Civ. 9883 (JFK), 2006 WL 1190691 (S.D.N.Y. May 1, 2006) ..................8

*Lipetz v. Wachovia Corp.*,
    No. 08 Civ. 6171 (RJS), 2008 WL 4615895 (S.D.N.Y. Oct. 10, 2008) ..............10

*Maliarov v. Eros Int'l PLC*,
    No. 15-CV-8956 (AJN), 2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016) ..............14

*McKenna v. Dick's Sporting Goods, Inc.*,
    No. 17-CV-3680 (VSB), 2018 WL 1083971 (S.D.N.Y. Feb. 27, 2018) .................9

*Peifa Xu v. Gridsum Holding Inc.*,
No. 18 Civ. 3655 (ER), 2018 WL 4462363 (S.D.N.Y. Sept. 17, 2018) ...........................9, 10

*Rhode Island Laborers' Pension Fund v. FedEx Corp.*,
No. 19-CV-5990 (RA), 2019 WL 5287997 (S.D.N.Y. Oct. 18, 2019).......................................7

*San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc.*,
177 F. Supp. 3d 838 (D. Del. 2016)........................................................................................8

*Sgalambo v. McKenzie*,
268 F.R.D. 170 (S.D.N.Y. 2010) .............................................................................................9

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)..............................................................................11, 12

**Rules & Statutes**

Fed. R. Civ. P. 23 ............................................................................................................ *passim*

15 U.S.C. § 78u-4(a) *et seq.*............................................................................................ *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
No. 04-cv-8141 (S.D.N.Y.) ....................................................................................................15

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
No. 08-md-1963 (S.D.N.Y.) ...................................................................................................15

*Desilvio v. Lion Biotechnologies, Inc.*,
No. 17-cv-02086 (N.D. Cal. July 7, 2017)............................................................................14

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
No. 09-md-2027 (S.D.N.Y.) ...................................................................................................15

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ................................15

Proposed Lead Plaintiff Paul C. Kraft and Linda E. Kraft JTWROS ("Kraft JTWROS") and Randall Dobler ("Dobler") (together, the "American Midstream Investor Group") respectfully submit this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of its motion for the entry of an Order: (i) appointing the American Midstream Investor Group as Lead Plaintiff; (ii) approving the American Midstream Investor Group's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class (as defined herein); and (iii) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

The American Midstream Investor Group, a small, cohesive group of likeminded and sophisticated investors, respectfully submits that it should be appointed Lead Plaintiff in the above-captioned action (the "Action"). The American Midstream Investor group specifically seeks to be appointed Lead Plaintiff on behalf of a Class of all former owners of Third Coast Midstream, LLC f/k/a American Midstream Partners, LP ("American Midstream" or the "Company") common units who sold their units, and were damaged thereby, during the period from July 27, 2018, through July 23, 2019, both dates inclusive (the "Class Period"). The Action seeks remedies on behalf of the Class pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its directors, officers, and affiliates (collectively, "Defendants").

This case revolves around an undisclosed scheme set in place by Defendants to take American Midstream private for a fraction of its value. In order to effectuate their plans, Defendants abused their control over the Company by first reducing, and then withholding, American Midstream's quarterly distribution, which caused its unit price to plummet. By

artificially depressing the Company's unit price, Defendants were able to take American Midstream private at a substantial discount.  Therefore, American Midstream's minority unitholders were harmed as they did not receive fair value for their units.

The PSLRA requires that the Court appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court must determine which person or group of persons has the "largest financial interest" in the relief sought by the Class in the Action, and also whether such movant has made a *prima facie* showing that they are a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The American Midstream Investor Group respectfully submits that it is the "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff.  As set forth below, the American Midstream Investor Group sold **11,000** American Midstream common units during the Class Period—an interest believed to be greater than that of any other qualified movant.[1] Accordingly, the American Midstream Investor Group has a substantial financial interest in directing this litigation and recovering losses attributable to Defendants' violations of federal securities laws—an interest believed to be greater than that of any other qualified movant.  In addition to asserting the largest financial interest in this litigation, the American Midstream Investor Group also meets the typicality and adequacy requirements of Rule 23 because its

---

[1]     Copies of the PSLRA-required Certifications of Kraft JTWROS and Dobler (the "Certifications") are attached as Exhibit A to the accompanying Declaration of Francis P. McConville (the "McConville Decl.").  In addition, a chart identifying the Class Period transactions of Kraft JTWROS and Dobler in American Midstream common units is attached as Exhibit B to the McConville Decl.

claims are typical of those of absent Class members, and because it will fairly and adequately represent the interests of the Class.

Finally, pursuant to the PSLRA, the American Midstream Investor Group respectfully requests that the Court approve the selection of Labaton Sucharow as Lead Counsel for the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class").  Labaton Sucharow is a nationally recognized securities class action litigation firm that has recovered billions of dollars in damages for defrauded investors.

Accordingly, the American Midstream Investor Group respectfully requests that the Court appoint it as Lead Plaintiff for the Class and approve its choice of Counsel.

## **FACTUAL BACKGROUND**

Formed in 2009, American Midstream is a growth-oriented master limited partnership formed to own, operate, develop, and acquire a diversified portfolio of midstream energy assets. At all relevant times, American Midstream's general partner was American Midstream GP, LLC (the "General Partner").  The General Partner was solely responsible for supporting and conducting the business operations of American Midstream, which partnership lacked any employees of its own.

In 2011, American Midstream conducted an initial public offering of its common units, which offering closed on August 1, 2011 (the "IPO").  Following the IPO, American Midstream consecutively issued a quarterly distribution of $0.4125 per common unit, or $1.65 per unit annually.  This distribution, therefore, was material to investors seeking a reliable return on their investments.

At all relevant times, ArcLight Capital Partners, LLC ("ArcLight") owned approximately 51 percent of American Midstream's voting power, and therefore was American Midstream's

controlling unitholder.  In addition, ArcLight was affiliated with the General Partner's owners. High Point Infrastructure Partners, LLC ("HPIP"), which owned 86 percent of the General Partner, was a subsidiary of Magnolia Infrastructure Partners, LLC ("MIP"), which was a subsidiary of Magnolia Infrastructure Holdings, LLC ("MIH"), which in turn was a subsidiary of ArcLight.  AMID GP Holdings, LLC, which owned the remaining 14 percent of the General Partner, was also an affiliate of ArcLight.

By virtue of its status as the majority unitholder of the Company and its interested relationship with the General Partner, ArcLight had complete control over American Midstream. During this time, ArcLight ensured that the majority of American Midstream's Board of Directors were all affiliated with ArcLight.  In addition, ArcLight, through its power over the General Partner, had the ability to control the day-to-day operations of American Midstream, including whether to cut or suspend cash distributions to American Midstream unitholders.

On July 27, 2018, Defendants initiated the first step of their scheme to take American Midstream private for a fraction of its value.  On this date, American Midstream—at the behest of ArcLight—declared a *75 percent* reduction in the Company's quarterly common unit distribution to $0.1031, or $0.4125 annually.  As a result of this massive reduction, American Midstream's unit price declined over *42 percent*, falling precipitously from $11.55 to $6.60 on July 27, 2018.  This distribution cut was part of a scheme by ArcLight to artificially depress the trading price of American Midstream's common units in order to take American Midstream private for nearly half of the pre-cut trading price.

To that end, on September 14, 2018, less than two months after the distribution cut was announced, ArcLight informed American Midstream that it was evaluating a potential strategic transaction involving American Midstream, including a potential take private transaction.

Then, on September 27, 2018, MIH, which again, was a subsidiary of ArcLight, and indirectly the 86 percent owner of the General Partner, delivered a non-binding offer to the General Partner's Board to acquire all of the issued and outstanding publicly held common units of American Midstream that were not directly owned by MIH or its affiliates in exchange for $6.10 in cash for each such common unit.  MIH's offering price was a ***47 percent*** discount to American Midstream's unit price of $11.55 immediately prior to the reduction of the Company's quarterly distribution.

Then, on December 31, 2018, American Midstream reported that because of an amendment to its credit facility agreement, it did not expect to make *any* distributions to its unit holders in the upcoming fourth quarter of 2018, and would continue to *withhold* said distributions until its consolidated total leverage ratio was reduced.  On this news, American Midstream's common units declined $1.30, or ***30 percent***, closing at a price of $3.03 per unit on December 31, 2018.

While the distribution remained in limbo, on January 2, 2019, MIH submitted a revised non-binding offer to acquire all the issued and outstanding publicly held common units of American Midstream not directly owned by MIH and its affiliates in exchange for $4.50 in cash for each such common unit.  MIH's revised offer now represented a ***61 percent*** discount to the Company's unit price immediately prior to the quarterly distribution reduction.

On March 18, 2019, American Midstream publicly disclosed it had entered into a merger agreement with MIH pursuant to which American Midstream unitholders would receive $4.50 per unit for MIH to acquire the remaining publicly-traded American Midstream common units (the "Merger").

On July 23, 2019, American Midstream announced the closing of the Merger, and the Company's unitholders received $4.50 in cash in exchange for each of their units.  On August 2, 2019, American Midstream announced that its units had been delisted.

Therefore, as a result of the distribution cut put in place by virtue of ArcLight's *de facto* status as the true controlling force behind the Company, American Midstream minority unitholders received approximately ***60 percent less*** consideration for their units than the common unit price immediately prior to the distribution cut on July 27, 2018.

**ARGUMENT**

**I.      THE AMERICAN MIDSTREAM INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF**

The American Midstream Investor Group respectfully submits that it should be appointed Lead Plaintiff because it filed the instant motion in a timely manner, believes it has the largest financial interest in this litigation of any qualified movant, and satisfies the typicality and adequacy requirements of Rule 23.

**A.      The PSLRA Standard For Appointing Lead Plaintiff**

The PSLRA provides a straightforward procedure for selecting a lead plaintiff for "each private action arising under [the Securities Act or the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff).  First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
>
> (I)      of the pendency of the action, the claims asserted therein, and the purported class period; and

(II)    that, not later than 60 days after the date on which the
notice is published, any member of the purported class may move
the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as lead plaintiff and appoint the "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(i).  In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person who:  (i) filed a complaint or made a motion to serve as lead plaintiff; (ii) has the largest financial interest in the relief sought by the class; and (iii) who otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011).  This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Rhode Island Laborers' Pension Fund v. FedEx Corp.*, No. 19-CV-5990 (RA), 2019 WL 5287997, at *1 (S.D.N.Y. Oct. 18, 2019).

**B.    The American Midstream Investor Group Is The "Most Adequate Plaintiff"**

**1.    The American Midstream Investor Group's Motion Is Timely**

The American Midstream Investor Group filed this motion to serve as Lead Plaintiff in a timely manner.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), Labaton Sucharow, counsel for Kraft JTWROS, the plaintiff in this litigation, published notice on *Globe Newswire* on October 10, 2019, the day the complaint in the Action was filed.  *See* McConville Decl., Ex. C.  The notice, in accordance with the PSLRA, indicated that applications for Lead Plaintiff must be made no later than 60 days from the date on which the notice was published, *i.e.*, on December 9, 2019.

The American Midstream Investor Group filed its motion seeking appointment as Lead Plaintiff within this deadline and thus has satisfied the procedural requirements of the PSLRA.

### 2. The American Midstream Investor Group Has the Largest Financial Interest

The PSLRA instructs the court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Kemp v. Universal Am. Fin. Corp.*, No. 05 Civ. 9883 (JFK), 2006 WL 1190691, at *2 (S.D.N.Y. May 1, 2006). While the PSLRA provides no definitive guidance on how to calculate financial interest, courts look to total shares sold when the class, as here, is defined as "a 'seller' class, not a traditional purchasers class." *San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc.*, 177 F. Supp. 3d 838, 840 (D. Del. 2016) (appointing lead plaintiff movant who "sold . . . more shares than any other proposed lead plaintiff"); *see also Basile v. Valeant Pharm. Int'l, Inc.*, No. SACV 14-2004 DOC(ANx), 2015 WL 13652714, at *1 (C.D. Cal. May 5, 2015) (using total shares sold to calculate financial interest in case brought on behalf of seller class).

At the time of this filing, the American Midstream Investor Group believes that it has the largest financial interest among Class members who filed timely applications for appointment as Lead Plaintiff and, accordingly, is presumed to be the "most adequate plaintiff." During the Class Period, the American Midstream Investor Group sold ***11,000*** American Midstream common units—an interest believed to be greater than that of any other qualified movant. *See* McConville Decl., Ex. B. Accordingly, the American Midstream Investor Group has the largest financial interest of any qualified movant seeking Lead Plaintiff status, and is the presumptive "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Bevinal v. Avon Prods., Inc.*, No. 19 Civ. 1420 (CM), 2019 WL 2497739, at *1 (S.D.N.Y. June 3, 2019) (finding the movant with

the largest financial interest to be the presumptive "most adequate plaintiff"); *McKenna v. Dick's Sporting Goods, Inc.*, No. 17-CV-3680 (VSB), 2018 WL 1083971, at *4–5 (S.D.N.Y. Feb. 27, 2018) (same).

### 3. The American Midstream Investor Group Satisfies Rule 23's Typicality and Adequacy Requirements

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Avon Prods., Inc.*, 2019 WL 2497739, at *1. At the lead plaintiff selection stage all that is required to satisfy Rule 23 is a preliminary showing that the lead plaintiff's claims are typical and adequate. *See Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655 (ER), 2018 WL 4462363, at *4 (S.D.N.Y. Sept. 17, 2018) ("[A]t this stage of the litigation, a moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met."). (citation and internal quotation marks omitted).

### (i) The American Midstream Investor Group's Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims, and plaintiff's claims are based on the same legal theory. *See Sgalambo v. McKenzie*, 268 F.R.D. 170, 173–74 (S.D.N.Y. 2010). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *See Gridsum Holding Inc.*, 2018 WL 4462363, at *4.

The American Midstream Investor Group's claims are typical of the claims asserted by the proposed Class. Here, the American Midstream Investor Group's claims and legal arguments required to prove Defendants' liability in this action are virtually identical to those of absent Class members. Moreover, the American Midstream Investor Group and other Class members

9

have been harmed by the same Defendants' actions.  Specifically, the American Midstream

Investor Group, as did all members of the Class, sold American Midstream common units at

artificially deflated prices due to Defendants' fraudulent scheme, and was harmed thereby.

Because the American Midstream Investor Group's claims arise from the same course of events

as do the claims of other class members, the typicality requirement is satisfied.  *See id.*

> **(ii)** **The American Midstream Investor Group Will Fairly and Adequately Protect the Interests of the Class**

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a

representative party establishes that it "will fairly and adequately protect the interests of the

class." Fed. R. Civ. P. 23(a)(4).  Courts in this District assess a movant's adequacy based on the

following factors: "(1) the size, available resources and experience of the proposed lead plaintiff;

(2) the qualifications of the proposed class counsel; and (3) any potential conflicts or

antagonisms rising among purported class members."  *In re Elan Corp. Sec. Litig.*, No. 1:08-cv-

08761-AKH, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009) (citation omitted).

The American Midstream Investor Group will fairly and adequately represent the

interests of the proposed Class.  No antagonism exists between the American Midstream Investor

Group's interests and those of the absent Class members; rather, the interests of the American

Midstream Investor Group and Class members are squarely aligned.  Moreover, because of the

American Midstream Investor Group's financial interest in this Action, Class members can be

assured that the American Midstream Investor Group has the incentive to vigorously represent

the Class' interests. *See Lipetz v. Wachovia Corp.*, No. 08 Civ. 6171 (RJS), 2008 WL 4615895,

at *3 (S.D.N.Y. Oct. 10, 2008) (noting investor's "substantial financial stake in the litigation"

suggests that it would "vigorously" prosecute claims on behalf of the class).   Finally, there is no

proof that the American Midstream Investor Group is "subject to unique defenses that render

such plaintiff incapable of representing the class," because no such proof exists.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

In addition, the American Midstream Investor Group has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, *see infra* Section II, and timely submitted its choice to the Court for approval, in accordance with the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) and 15 U.S.C. § 78u-4(a)(3)(B)(v).  Accordingly, the American Midstream Investor Group satisfies the adequacy requirement.

### 4.  The American Midstream Investor Group Is Precisely the Type of Small, Cohesive Group Permitted Under the PSLRA

Kraft JTWROS and Dobler, as members of the American Midstream Investor Group, have demonstrated their commitment to working cohesively in the joint prosecution of the Action.  *See* Joint Declaration, McConville Decl. Ex. D.  On this point, the PSLRA expressly provides for multiple investors to serve as lead plaintiff in federal securities class actions under the proper circumstances.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) (providing that the court shall appoint a "person or group of persons" to serve as Lead Plaintiff); *see also Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 119 (S.D.N.Y. 2010) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff."); *Hansen v. Ferrellgas Partners, L.P.*, No. 16-cv-7840 (RJS), 2017 WL 281742, at *3 (S.D.N.Y. Jan. 19, 2017) ("[A]s the statute makes clear, [g]roups of plaintiffs are specifically permitted by the PSLRA to be appointed lead plaintiff.") (internal quotation marks and citation omitted).  Therefore, in this instance, the American Midstream Investor Group is a proper lead plaintiff group.

In evaluating the propriety of lead plaintiff groups, courts in this District have adopted a test of five, non-dispositive factors in determining whether the appointment of a group of lead plaintiffs is appropriate: "(1) the existence of a pre-litigation relationship between group

members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008).  Further, "[a] group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small and therefore presumptively cohesive." *Janbay*, 272 F.R.D. at 119.

As set forth in the Joint Declaration, the members of the American Midstream Investor Group individually sought to retain Labaton Sucharow as counsel.  *See* McConville Decl. Ex. D ¶¶ 2–4.  Kraft JTWROS first retained Labaton Sucharow in order to serve as Plaintiff in the Action.  *See id.* ¶ 2.  Dobler, upon review of the PSLRA notice issued by Labaton Sucharow, through his own volition sought to retain Labaton Sucharow to represent him in the Action.  *See id.* ¶ 3.  Through their mutual retention of counsel, Kraft JTWROS and Dobler independently determined to communicate regarding their investments in the Company, and the pending case against Defendants.  *See id.* ¶ 4.  Based on these discussions, Kraft JTWROS and Dobler decided to jointly seek appointment as Lead Plaintiff in the best interests of all Class members.  *See id.*

Following this decision, the American Midstream Investor Group held a conference call on December 5, 2019 to formalize their relationship by strategizing in greater detail their collaborative approach to litigate the Action and oversee counsel, their commitment to zealously representing the Class, and the benefits their joint representation would provide to the Class.  *See id.* ¶¶ 8–10; *see also Chahal v. Credit Suisse Grp. AG*, No. 18-CV-02268 (AT)(SN), 2018 WL 3093965, at *5 (S.D.N.Y. June 21, 2018) (finding lead plaintiff group involvement in litigation satisfactory based on "conference call to discuss the responsibilities of the role and the benefits they would provide as a group").  Therefore, the members of the American Midstream Investor

Group have been requisitely involved in the litigation to date, independently sought and retained counsel, and through their own agency determined to seek joint appointment as Lead Plaintiff. *See, e.g.*, *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing a group in view of "declarations demonstrating cooperative efforts among" its members).

Moreover, the Joint Declaration submitted by the American Midstream Investor Group establishes Kraft JTWROS and Dobler as sophisticated investors possessing interests squarely aligned with those of the Class. *See Janbay*, 272 F.R.D. at 119 (appointing as lead plaintiff a group of "sophisticated individuals who have demonstrated their intent to participate directly in this litigation and their willingness and ability to serve as class representatives"). Specifically, the Joint Declaration provides the following information for each member: (i) the city and state of residence; (ii) background; (iii) investment experience; and (iv) the nature of their investment in American Midstream common units. *See* McConville Decl. Ex. D ¶¶ 2–3. As set forth in the Joint Declaration, the members of the American Midstream Investor Group are sophisticated investors with 91 collective years of investment experience. *See id.*; *Chahal*, 2018 WL 3093965, at *6 (finding group members sophisticated based on "financial trading backgrounds").

Further, the members of the American Midstream Investor Group each purchased American Midstream common units in reliance on the Company's consecutive quarterly distribution, which distribution was reduced, then withheld, as part of Defendants' alleged scheme to take the Company private for a fraction of its value. *See* McConville Decl. Ex. D ¶¶ 2–3. Indeed, unlike the "skeletal" joint declarations which provide little to no substantive

information concerning the movants which are frequently rejected as replete with generalities,[2] the Joint Declaration provides the Court with the information necessary to determine whether the members of the American Midstream Investor Group, both individually and as a whole, satisfy a preliminary showing of Rule 23.

Finally, the Joint Declaration provides that the members of the American Midstream Investor group understand and adopt the fiduciary responsibilities of the PSLRA lead plaintiff, and in that regard are determined to control the litigation independent of counsel. *See id.* ¶¶ 1, 12. To this end, the members of the American Midstream Investor Group, if appointed, will regularly communicate with or without counsel, confer with counsel regarding litigation strategy and other matters, and attend court proceedings, depositions, any settlement mediations, and hearings as needed. *See id.* ¶¶ 10–12; *see also Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 WL 1367246, at *5 (S.D.N.Y. Apr. 5, 2016) (finding group satisfactory where the members "represented that they are prepared to attend court proceedings, settlement conferences, and other hearings when doing so will be of benefit to the proposed Class") (internal quotation marks and citation omitted). Therefore, if appointed, the American Midstream Investor Group will endeavor to actively steer this litigation in order to efficiently and effectively maximize recovery for the Class.

Accordingly, the American Midstream Investor Group is an appropriate lead plaintiff

---

[2]    *See, e.g., Karp v. Diebold Nixdorf, Inc.*, No. 19 Civ. 6180(LAP), 2019 WL 5587148, at *5 (S.D.N.Y. Oct. 30, 2019) (rejecting lead plaintiff movant for failing to provide ***any*** information necessary to determine whether it satisfied Rule 23); *see also* Order re: Proposed Lead Plaintiffs, *Desilvio v. Lion Biotechnologies, Inc.*, No. 17-cv-02086 (N.D. Cal. July 7, 2017), ECF No. 35 (court *sua sponte* ordered all individual lead plaintiff applicants to file a declaration setting forth: "(i) each individual's city and state of residence; (ii) each individual's occupation; (iii) whether and to what extent the moving individuals are familiar with one another; (iv) how each individual came to retain his/her respective lawyer(s); and (v) the general nature of each individual's investment in the [company]") (order attached as Exhibit E to McConville Decl.).

group.

## II.   THE AMERICAN MIDSTREAM INVESTOR GROUP'S SELECTION OF COUNSEL MERITS APPROVAL

The PSLRA vests authority in the Lead Plaintiff to select lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Consistent with Congressional intent, a court should not disturb the lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the plaintiff class." *See* H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734.

Here, the American Midstream Investor Group has selected Labaton Sucharow to serve as Lead Counsel for the Class. Labaton Sucharow has excelled as lead counsel in numerous landmark securities class actions on behalf of defrauded investors, including cases within this District. For example, Labaton Sucharow served as lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, and secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which the Firm served as co-lead counsel. Labaton Sucharow also served as co-lead counsel in *In re Satyam Computer Services Ltd. Securities Litigation*, No. 09-md-2027 (S.D.N.Y.), through which it helped recover from the company and its auditors a total of $150.5 million for class members. Labaton Sucharow presently serves as lead counsel in several significant investor class actions. *See* Labaton Sucharow Firm Resume, McConville Decl., Ex. F.

Thus, the Court may be assured that, by granting the American Midstream Investor Group's motion, the Class will receive the highest caliber of legal representation.

## CONCLUSION

For the foregoing reasons, the American Midstream Investor Group respectfully requests that the Court grant its motion and enter an Order: (i) appointing the American Midstream Investor Group as Lead Plaintiff; (ii) approving the American Midstream Investor Group's selection of Labaton Sucharow as Lead Counsel for the Class; and (iii) granting such other and further relief as the Court may deem just and proper.

DATED:  December 9, 2019

Respectfully submitted,

*/s/ Francis P. McConville*

**LABATON SUCHAROW LLP**
Christopher J. Keller
Eric J. Belfi
David J. Schwartz
Francis P. McConville
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile:  (212) 818-0477
ckeller@labaton.com
dschwartz@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

*Attorneys for Proposed Lead Plaintiff Paul C. Kraft and Linda E. Kraft JTWROS and Randall Dobler, and Proposed Lead Counsel for the Class*